All right. Thank you. This is the matter of Dennis v. City of Philadelphia et al. Mr. Hazelbarth, you wish to go forward? Yes, sir. Good morning, and may it please the Court. Shane Hazelbarth on behalf of defendants, appellants, Detectives Frank Jastrzemski and Manuel Santiago, and I would like to reserve three minutes for a vote. Granted. The detectives are entitled to dismissal on the ground of qualified immunity because the complaint fails to plead under the Fourteenth Amendment. Mr. Dennis protests his innocence of the crime of murdering Shadel Williams in October of 1991, but the flaw in his argument and the error in the district court's will undermine an existing criminal record for that murder because it asserts that the acts and omissions of the detectives caused an innocent person to be wrongly convicted. The claims asserted against the police officers were not clearly established in the 1991 and 1992 time frame. Pursuant to a letter docketed by the clerk late last week, we were asked to be prepared to address jurisdiction. I do want to ensure this court has jurisdiction to review and reverse the district court's order. The only concern, and that was my request, was whether or not the without prejudice denial impacts appealability and whether the without Yes, Your Honor. The answer is no. That has no impact on this court's jurisdiction. Berens versus Pelletier held that to the extent of a motion to dismiss raising qualified immunity turns on an issue of law that is conclusive on the qualified immunity right to be free from the burdens of discovery. And so that conclusive ruling, even though it at the pleading stage, is a final appealable decision to the extent it turns on an issue of law. And this one does. All right. Thank you. So turning to the qualified immunity analysis, of course, the first element is a plausible claim that the defendants can be held liable to the plaintiff for a violation of constitutional rights and inextricably intertwined. Heck, the Humphrey Bar. Chief Judge Smith, I know you in particular maybe find the inextricably intertwined language to be unhelpful. You wrote an opinion called US versus Green in 2010, where you frankly said nobody knows what that phrase means. But we as litigation counsel have to take the law as it's given to us. And in the Iqbal, the Ashcroft versus Iqbal case, the court said that the sufficiency of a complaint is inextricably intertwined and directly implicated by the qualified immunity defense. Because this unique defense held by a certain segment of society, officers exercising discretionary functions, this defense allows the court to review the sufficiency of a complaint to see whether it's plausibly states claims for on jurisdiction and fully supports the review of the Humphrey issue. In this case, the claims stated are in fact implausible in light of the conviction because the nature of the claims asserted, which are suppression of evidence, misleading the court, deception, fabricating evidence. These types of claims necessarily target the integrity of a judicial proceeding that the plaintiff had before this case. The United States Supreme Court case called McDonough versus Smith clearly holds this, that when the claim is a fabricated evidence type claim, a 1983 claim alleging that a state actor fabricated evidence and misled a criminal court, that type of claim targets directly the integrity of a criminal proceeding. And so the McDonough court held the cognizability of that claim must await the favorable resolution of those proceedings. In this case, the judicial proceedings that began in 1991 and 1992 and ended in 2016, those proceedings did not terminate in Mr. Dennis's favor. He was convicted, of course, of crimes arising in 2001 of the murder of Shadel Williams and related crimes. Those convictions bar the types of claims he's asserting here because they target the integrity of the criminal proceedings. That's not what the second, doesn't seem to be what the second circuit held in Poventude or what the ninth circuit held in Jackson v. Barnes. Do you concede that if we accept your argument, we will be charting a different course than those two circuits did in those cases? No, and the difference in those cases is that in Poventude, for example, the plaintiff in the underlying criminal case, the defendant, the plaintiff was convicted of attempted murder, which took place in a taxi. The claim in the 1983 case was that the actors suppressed exculpatory evidence, the failure to identify him in the lineup. With that evidence now removed from the case, Mr. Poventude pled to non-violent attempted robbery. An attempted robbery can take place in the apartment when he takes any act in furtherance of that crime. The nature of the evidence that was suppressed in that case, the exculpatory failure to identify the defendant, that claim, the 1983 claim, would not undermine the conviction for attempted robbery, which arose from his guilty plea. That's different. All right, so you're saying you're saying it's a different crime, right? The burglary is a different crime than the attempted robbery. Yes, your honor. Yes. All right. But I anticipate what Mr. Rudofsky is going to say that here, didn't Mr. Dennis enter a NOLA contenderate plea to a different crime than what he was charged with initially? The argument in the brief was that he pled to lesser charges. Right. The lesser charge was third degree murder, which is less than first degree murder. But he's still convicted of the murder of Shadel Williams and the related crimes of possessing an instrument of crime and conspiracy. And the types of claims he's asserting is that the officers cooked up a prosecution of a person who's innocent of those. But in no way, in no way will the conviction of third degree murder be affected by any of the proceedings that are presently before us. Is that correct? It is not correct, Judge Roth. It will absolutely be undermined by success in this lawsuit. And if Mr. Dennis succeeds in this lawsuit and proves that the municipal defendants suppressed evidence and fabricated evidence and thereby led to the conviction of an innocent person, the conviction of third degree murder of Shadel Williams will necessarily be undermined. And McDonough versus Smith made this clear. The type of claim directly implicates the integrity of the criminal. This is unlike, for example, in Wallace versus Cato, which involved a Fourth Amendment false arrest claim. The plaintiff there said, you arrested me without cause. And the Supreme Court held that that type of claim necessarily undermine a resulting conviction. However, in the Wallace versus Cato case, it did say, if a conviction comes down and the claim would implicate that conviction, heck would require dismissal of the civil suit. And so here, when Mr. Dennis pled nolo contendere, in the very same criminal case in which he was convicted the first time and which this court's en banc judgment vacated that conviction, in the very same criminal case, he was convicted of the crimes that took place in October of 1991. Because of the direct tie between the 1983 claims he's asserting and the conviction that he is subject to, because of that direct tie, heck bars this lawsuit. The court was clear. Are you saying that if Mr. Dennis did succeed in this lawsuit, that his conviction for nolo contendere for third degree murder will then be invalid and he'll be able to walk free? No. Judgment of the state criminal court review in this case, either before this court or the But what success in favor of Mr. Dennis in this civil case, what that would do is it would undermine the integrity of that criminal judgment. And that is something the Supreme Court and the courts of appeals absolutely are told to avoid. And so what does that what does that mean? What are the practical implications? What are the legal implications of undermining the integrity of the conviction? They are they are well explained in the McDonough versus Smith opinion, which is a concern for parallel and contrary resolution of issues. In the in the one case, the state criminal case, he was adjudicated for this crime and convicted and sentenced for this crime. He was sentenced to 25 years. Now, in the civil case, he wants to be adjudicated, absolutely innocent of these crimes and that the detectives had no basis even to initiate a prosecution against him and no basis to continue on or to convict him to use evidence at trial. Those two absolutely contradict each other. And therefore, as a matter of federalism, polity, the courts avoid hearing those types of claims because existing criminal judgments. There is he'll still be he'll still be guilty of third degree murder. No contender. I mean, and nothing will follow from that. So maybe maybe it's, quote, undermined, but it still is a valid conviction. That's true. And because it would be undermined, heck, requires dismissal of this lawsuit. In most of these cases, we have a criminal defendant who is in the relatively early stages of serving his sentence. This case presents the unusual scenario where Mr. Dennis is already at his time served for his NOLA contender plea. Does that make a difference for the heck analysis? Because you understand how if somebody's in year five of a 25 year sentence and then prevails in a civil case that determines that he was essentially set up and and and was his civil rights violated by the the officers involved in the prosecution, it would be passing strange for that that winning civil litigant to spend another 20 years in jail. But here we don't have that since Mr. Dennis has already served his sentence. What what difference, if any, does this factual posture make and all that? The factual posture of his having served time would certainly impact a damages analysis. But the legal argument we are making here against the complaint, it's the existence of the conviction that makes or breaks the case. Because there's a conviction, his case must be dismissed and we ought to win this appeal. The fact that he has served a sentence, you know, that makes his ability to obtain habeas relief more difficult or impossible. And of course, you know, where habeas relief is available, 1983 relief often is not. But that academic analysis is is really out of place here simply because of the conviction. There's no there's no further look beyond the conviction. You know, Judge Hardiman, you said a person serving having served five years of a 25 and then obtains relief in a civil case. The hypothetical necessarily implies that he first had his conviction vacated and then was allowed to proceed in the civil case. Here, that's not true. While the court did vacate one conviction, the Nolo Contendere plea. No, my hypothetical was was presuming that the 25 year sentence was a valid conviction and he was serving that sentence. And the reason the reason I I assume that in my hypothetical is that Mr. Dennis was pleaded Nolo Contendere and got a very sizable sentence in exchange for that plea. But it also is a fact that he had spent many, many years in jail. And that's why he he didn't have to. You know, he walked out with time with time served, right? Right. Yes. And so having paid his debt to society, he was allowed to go. But the conviction was not vacated, impugned or invalidated. As the language of Heck v. Humphrey says, the the the existence of the conviction, its ramifications for the civil case are great. It requires dismissal. Its ramifications for his ability to walk around at liberty. Yes. Having served the sentence, he's free to go. But it's the conviction and not the the forward looking pending sentence that bars this claim. Any other questions of Mr Hazelby? No. We will have we will have back on rebuttal. If not, we'll have you back on rebuttal. Mr. Thank you. Mr Rudofsky. Thank you, Chief Judge Smith. David Rudofsky for James Dennis. I'm going to leave from my briefs the arguments regarding waiver of the arguments that the defendants have made. It's so interesting. In the district court, they said nothing about Fourth Amendment or 14th Amendment. Their whole argument on qualified immunity in this court in the main brief is that supposed difference between Fourth and 14th Amendment. They're wrong in the merits on that and they're wrong because they have waived it. But let me address directly this. It really would pose some difficulty for us analytically to to determine there was waiver or forfeiture here, wouldn't it? How can we avoid addressing the issue? I don't think you can. I think that I waived it in the district court. They never made an argument that this should have been brought into the Fourth Amendment. They're wrong about that. Manuel itself says once there's a trial, the Fourth Amendment drops out and it's a 14th Amendment issue. They're wrong in the merits, but they never made that argument in the district court. Assuming you're right about that, which for myself, I did find persuasive in your briefing, we still have to deal with the heck issue. And let me go to that directly. If this was only a heck appeal, you wouldn't have jurisdiction. Really, this is another example of a qualified immunity appeal in which there is no merit to the argument that the claims we made were not clearly established. Falsification, deliberate deception, concealment, those claims were clearly established. What the defendants have tried to do here is to bootstrap the heck argument. But let me address the heck argument, because that's what you spent your time on. And Judge Roth is absolutely correct. What the defendants have not contested at all in this litigation, even though we've made it clear, we have very limited claims as a result of the Nolo plea. We can't claim damages for the 25 years he was in prison. But we have identified three specific harms that resulted from the 1992 conviction, which was overturned by this court in the habeas proceedings, even through an AEDPA lens that was determined that there were constitutional violations. And there were three specific claims that we have identified they have failed to address that would lead to the first degree conviction in 1992 was a capital conviction. And in fact, Mr. Dennis spent 25 years on death row with several execution dates. Those harms and those damages are not affected by his plea to third degree murder on the Nolo plea, where he didn't say he was guilty. He was going to be executed. And for the time on death row is a claim separate and apart and doesn't call into question or undermine the Nolo plea. That's the first. So let me let me just stop you there one second, because I want to make sure I understand the subtlety of your argument. It sounds like what you're saying is that you you acknowledge that he can't challenge that he tacitly at least admitted to killing Chadell Williams. But because that was a third degree charge, that would not have subjected him to the death penalty. But because the prior prosecution did subject him to the death penalty, his damages aren't about being an innocent, innocent of killing Chadell Williams. It's it's about being on death row instead of being in jail for for decades and decades for for pleading Nolo to third degree murder. Is that the essence of the claim? Precisely. And that's one element of damages that's not affected again by the Nolo plea. So if this if this goes to trial, you're going to have to stand up in front of the jury and say, look, we're not we're not in a position to say that my client didn't kill Chadell Williams. He's admitted as much. But he admitted to killing her in a way that would not have subjected him to the death penalty. And because of what happened before, he suffered all of this this harm while on death row. Is that what the trial is going to look like? Well, in part, because I have two other claims here. And that death penalty was caused by the unconstitutional acts that we see related to the fact that we did and thought he was going to be executed with the conditions on death row related to this. Obviously, the unconstitutional in some situations, we will mount evidence to show that the conditions that he was under for those 25 years he would not have been under if he had pled guilty to third or who's found guilty of third degree murder at the first trial. Third, and let me go and let me stress this one. If he had been convicted only in 1992 of third degree murder, and given the 12 and a half to 25 year sentence, he would have been eligible for parole at the end of 12 and a half years. Um, we will be able to prove a trial. And again, this discovery, this will require decisions on what evidence is relevant. We will have evidence that as of that time, someone who pleads guilty to third degree murder in Pennsylvania will be paroled normally, at the minimum. In other words, he wouldn't have served 25 years, he might have only served 12 and a half years at that point, and therefore has damages for the 12 and a half years in addition that he served, he would have had a service minimum. But we will have data from the parole board, expert testimony if necessary, as to the harm that was caused by a capital prosecution in which he's on death row, obviously can't be paroled. And a third degree conviction. And the sentence he got was 12 and a half years. So we have another 12 and a half years to show damages. Uh, obviously not the full 25 years. The critical point in assessing this under Heck versus Humphrey, what the defendants are making on a Heck versus Humphrey, it's all or nothing. Once there's a conviction, you can't claim any damages or harms. That's not what Heck versus Humphrey holds. Judge Roth is right. Nothing on those three claims of harm or damages would call into question or invalidate the Nolo plea. It would invalidate a first degree conviction, a first degree capital conviction. We know that, right? Well, and that was already invalidated. We have a final favorable termination that that first degree capital conviction was vacated once this court and bank granted habeas corpus relief. At that point, um, what had been proven and what we allege in this case, we'll have to prove it again, is that the various deliberate deception, the falsification of evidence, um, all the claims we make here, uh, caused that capital conviction that was overturned. It was never reinstated. There's no Heck versus Humphrey bar with respect to that. It was a favorable termination on first degree murder. Once he pleads guilty to third degree, the Heck versus Humphrey issue on merits, put aside whether it's properly before you on this appeal or not, you'll have to wade through that on inextricably intertwined. I agree with Judge Smith, whatever that means. Um, uh, what, what, what Heck versus, uh, Humphrey says is that he's barred only if the conviction, the Nolo would call into question these three elements. It doesn't. Um, all three are outstanding. All three were caused by the unconstitutional acts of the, of the defendants. If you pleaded guilty to first degree non-capital would Heck bar this case? No, I think there's still, if it was non-capital, if you still have the claim that he spent years on death row that he should not have spent surely limited damages. Well, but that, I don't know. I don't know if I'm persuaded by that because, and tell me why I'm not the punishment. And if he, if he pleaded guilty to first degree murder, then it seems to me your civil claims in this case would undermine that first degree murder conviction, regardless of whether he served 20, 50 or was executed. Yeah. So certainly, um, uh, uh, a different case than, than third degree, but, but, but let me, let me, let me come to terms with what you said. There is a difference in the substantive matter between first degree capital and first degree life imprisonment. Um, they're both first degree, but we've got a statute in Pennsylvania in terms of the, uh, penalty that can be imposed. And it's either death, uh, or, or death sentence or life imprisonment. And therefore, if the death sentence was caused by the underlying unconstitutional acts of the defendants, which it was in this case, um, even if he late later pled guilty to first degree, which he did not hear, uh, for life imprisonment, he would still have, and it would be a much narrower claim, uh, not for the 12 and a half years, but for the conditions on death row. Uh, that's a different case. You don't have to decide that. Um, uh, but it's certainly a different case. And, and, and judge Hardiman, you mentioned not only did the second circuit and Pobentude and the ninth circuit and Jackson, uh, agree with our position to other circuits, uh, have as well, uh, Olson in the first circuit, uh, reaches the same conclusion Smith versus Gonzalez and the 10th circuit reaches the same conclusion. And in fact, Olson is really instructive here. It's a very similar claim. Uh, the first circuit had to deal with a large damage award after a second trial. And they said the defendant wasn't entitled to the $1.5 million, uh, because that would have called into question his later plea. And he served some time, but he was entitled, uh, to what the jury came back later with a much more reduced, uh, uh, penalty, uh, against the defendants of, of several, uh, of several thousand dollars because heck versus Humphrey would not have called into the lesser included offense that he played guilty to. So you have four circuits, uh, on the heck versus Humphrey issue, contrary to what the no circuit has gone that way. Um, uh, and, and the reason is that analytically, they were absolutely correct. Heck versus Humphrey is not like malicious prosecution where you have to show a favorable termination at the end. That's not the rule of heck versus Humphrey. It's a much more limited restriction on where you can sue. And it only bars a suit where if you're successful, you will invalidate or call into question the plea that was entered these three categories of damages. And, and, and it's quite remarkable in all the briefing that's been done here, just before here, we have made that point repeatedly. The defendants have never responded to those three special categories of damages that were entitled to that are not affected by the Nolo plea, uh, that was entered 25 years later. Uh, and so even if this court thinks this is somehow, uh, inextricably intertwined to qualified immunity, their qualified immunity claims were both waived and entirely frivolous. Uh, this fourth amendment, 14th amendment division is, is, is, is literally frivolous because the Supreme Court of Manuel and this court itself on several occasions have said, once there's a trial, it's a 14th amendment claim. If we had pled fourth amendment claim, we would have been dismissed. Um, uh, it's clearly a 14th amendment claim. Um, and their arguments, when you look at Halsey, this court four years ago case, I argued with a court said, fabrication is a freestanding claim under the 14th amendment. It's not controlled by malicious prosecution. It's not a Brady claim. Uh, same thing with deliberate deception. First circuits recognize that other circuits have recognized it. These are well established claims and the argument that a police officer investigator in 1991 would not know that it was unconstitutional to fabricate evidence, to deliberately deceive the court and opposing counsel to conceal evidence. Those principles have been established by the U S Supreme court and by this court for decades. It doesn't Gibson foreclosed the deliberate deception claim under Mooney in our circuit. I think it does not that that argument was made. We did not make a Brady claim. Uh, Gibson is a question of whether or not Brady was applicable to police officers before 1995. Well, we specifically said that, uh, here's a direct quotation from Gibson. It would be affirmatively conceal material evidence from the prosecutor. Yet this duty was not clearly established in 1994. That's Gibson at page four, four, three. And that's right. And that relates to a claim of Brady. And in fact, what the defendants try to do here, we made no Brady claim in the district court. Look at our complaint. It's deliberate deception. It's fabrication. Um, as the first circuit is held in, in Haley, um, those are separate claims. And I think what this court said in Gibson is if you're making a Brady claim, the police didn't have that obligation to turn over evidence affirmatively. Brady's a different kind of claim. Uh, it can be violated by negligence. Uh, we have a heavy burden of proof here. Judge Hardiman, when we say deliberate deception and fabrication, we have to an intentional deliberate act by these defendants to, as this court said in Halsey, um, uh, to do things that would corrupt the truth determination process at trial. But then how does that then if that's true, how does your client get it? How is he, uh, liable under third degree murder? How's it possible that he's liable for third degree murder? Then the third degree murder, we agree. He can, he, he, he cannot attack that third degree murder, uh, Nolo plea. What you just said is true about fabricating evidence, concealing evidence, all that sort of stuff. How could he be in legal jeopardy for third degree murder? If all that is true. Because he got out of jail free and otherwise he was still in jail for a couple of years. And I think there was, yes, I think, I think the response is that when he pled Nolo, he had all this information, right? Now the case has been purged of all the unconstitutional conduct by the officers as a result of the habeas proceeding. We now had all this information. We knew what the fabrication was. We knew what the deliberate, uh, deception was. Um, uh, so he pled guilty. Then he's innocent. If, if, if the case and receipt really showed, uh, what Dennis argued in the Dennis habeas case, then Dennis could not have shot Chaddell Williams. And it would, it would be a physical impossibility. That was the argument. Absolutely. Um, and we all know when he pled guilty or pled Nolo, not even guilty, right? Um, uh, what was he faced with? Um, he'd gotten a new trial. Uh, he can either walk out that day or spend another two or three years in vindicating his innocence. He, he pled Nolo because of that. We recognize that, but let me go back to the central point. What the defendants are arguing is that his capital conviction, which was caused by that deliberate deception and that fabrication was overturned. Um, the third degree Nolo plea does not reinstate any of that. And that's why we've limited our damage claims significantly here to those three points. There's no under heck versus Humphrey. There's no inconsistency between his plea to third degree murder Nolo, um, and his claims, the damages that resulted not from that determination, but from the unconstitutional conviction in 1992. That's why we've got clear space between what happened between those, those two items. And, and, and I have to say this, this, this case, how it's here on qualified immunity when, when, when there's no claim here, I think that it doesn't state a cause of action for fabrication. We're not making a Brady claim, uh, deliberate, uh, concealment. This is a really a case of the, you know, the, the, the qualified immunity tail wagging the dog, right? Um, if this was just a Humphrey claim and defendants have lost in the district court, this court would have no appeal, uh, no, no authority to hear that appeal. Um, and now we have basically a qualified immunity claim that's been waived. The 14th amendment, the fourth amendment, uh, the deliberate deception claim wasn't argued in the district court, either. Judge Hardiman, there was no argument by the defendants in the district court that he didn't state a claim on that that's waived as well. Um, uh, if you look at the motion to dismiss, if you look at, um, Judge Rubino's ruling, they made no argument that that wasn't clearly established. Um, and yet they use all that and come back to this court and say, now you've got qualified immunity jurisdiction. We agree. And now somehow heck is inextricably intertwined. Um, uh, so it, it shouldn't be here in the first place, but if we're dealing with the heck merits, um, uh, four circuits have agreed with us on this, um, in, in factual situations, which are virtually identical to our case, no circuit has gone the other way. And it's fully consistent with heck, which is a much more limited restriction on a plaintiff's right to sue. Then for example, malicious prosecution, where you have to show favorable termination, final word, uh, McDonough McDonough is an accrual case. Um, it's completely different from this case. McDonough is an accrual case and all McDonough says as a savory case in the seventh circuit says that the, that the defendants point to is that, um, uh, a plaintiff formerly criminal defendant cannot his claim for civil rights violation does not accrue until the criminal case is over is fully terminated, not a favorable termination. It's fully terminated. So in savory, uh, the defendant who was serving a life imprisonment first, uh, got a commutation, um, uh, of his sentence several years later, got a full pardon. And it's only when he got the full pardon, which ended that case completely that his claim accrued. That's the ruling McDonough nothing to do here with a question of either qualified immunity or of the heck versus Humphrey bar. Thank you, Mr. Rudofsky. Thank you. Yes, thank you. Um, I'll go in reverse order. Uh, McDonough, deems it an accrual case. It does say directly that a fabricated evidence claim hates the integrity of judicial proceedings and therefore is not cognizable until those judicial proceedings resolve in the plaintiff's favor here. They did not. He's convicted. And therefore this claim was, um, the three points of damage he made, uh, being subject to a might have been paroled at some earlier times. Those are damages issues. The argument we're making here in the, in the very words of heck V Humphrey, the, the 1983 action is not cognizable. We are not in grafting official element to the claim. We are denying the existence of a cause of action. And so while his damages claims may be limited, the argument is that his liability claims against these officers do not exist. Um, again, it was, it was demeaned as bootstrapping those, those liability claims don't exist only if, only if the civil case undermines the Nolo plea in violation of heck. Correct? Yes, your honor. And as you pointed out the, um, the case in receipt, the alleged suppression of, um, the identification and the lineup, those things make his act of murder and impossibility. He's on the other side of the city. He's not holding the gun. He's not in the intersection when should Dell Williams died. The problem with making that those arguments is that they undermine his extant conviction for murder and use of a weapon. What if we took those out of the civil case? Could he still be, could he still be convicted or still enter a valid Nolo plea? Well, he, he can plead Nolo to whatever he wants, but the type of 1983 claim he can bring is anyone that does not undermine that conviction. So maybe a fourth amendment false arrest claim. You arrested me without probable cause, even though I can't say I'm innocent of the crime and that your conduct gave rise to an unconstitutional trial versus Smith noted that McDonough versus Smith distinguished Wallace versus Cato. Wallace was a false arrest claim. McDonough was a fabricated evidence claim. The nature of the ladder barred it's, it's arising until the criminal proceedings resolved in his favor. In that case, the Mr. McDonough was acquitted of the crime here. Mr. Dennis was acquitted, was convicted of his crime on the Nolo plea. That's a, that's a 100% distinguishing factor. This claim is not cognizable. The claims he brings here, we're not targeting his damages. We're targeting his, his, the very existence of a claim against these officers. And finally, judge Hardiman, yes, Gibson, 1983 claims against police officers for failing to turn over evidence, fabricating evidence. It ruled that those were not clearly established until at the very earliest 1995 in Kyle's versus Whitley or Gibson itself in, uh, opposing council pointed out that those were, that was a Brady claim and here they don't have a Brady claim, but the, the analysis Gibson equates, and this is what I did in my brief, then analysis and Gibson equates such a claim in this circuit, which is different from other circuits in this circuit. It's affirmative concealment of evidence. It's, it's really not different than a Brady claim, even though the title is going to be different. And 1983 claim for suppression of evidence. It was not actionable against officers in 1991 and 1992. We are not making the argument that what about, what about fabrications? What is your question judge Roth? What about fabrications? That's not active concealment. That's making it up. Yes. And there was no case that has been cited in these briefs that provides an adequate analysis of that claim against police officer in 1991 and 1992, the, uh, Mooney case and its progeny was against prosecutors. And that makes a difference because remember the qualified immunity analysis looks to what the officers knew at the time they were acting, what evidence was used at trial after the investigation that, that was not thought to the conduct of the officers in, in developing a case and bringing it to the prosecutor. When a claim was allowed against officers that changed the game. And so it didn't happen until after 1991 and 1992. Thank you. Thank you very much, Mr. Thank you, Mr. Rudovsky. It's an interesting case. Well argued by both of you. We thank you very much. We'll take the case under advisement.